SAFECO INSURANCE COMPANY OF AMERICA, Appellant,

v.

Thomas M. GAUBERT, Barbara A. Gaubert, & John R. Barnes, Appellees.

No. 05–90–00296–CV.

Court of Appeals of Texas, Dallas.

Feb. 28, 1992.

Rehearing Denied May 4, 1992.

Frank M. Gilstrap, Jay E. Reedy, Arlington, for appellant.

Robert M. Greenberg, Gregg A. Cooke, Travis P. Clardy, Daniel R. Rogers, Ivan M. Scott Jr., Dallas, for appellees.

Before STEWART, BAKER and CARVER[1], JJ.

## OPINION

STEWART, Justice.

Safeco Insurance Company of America (Safeco) sued Thomas M. Gaubert, Barbara A. Gaubert (Gaubert) and John R. Barnes (Barnes) for breach of an indemnity contract. The trial court granted summary judgment for Gaubert and Barnes and denied Safeco's motion for summary judgment. In seven points of error, Safeco argues that the trial court erred in denying its motion because (1) the evidence conclusively established that appellees were liable under the indemnity agreement, (2) Safeco was not required to establish that it was liable on the bond, (3) rule 54 of the Texas Rules of Civil Procedure excused Safeco from proving performance, (4) Safeco did not act in bad faith, (5) there was no evidence of lack of consideration, (6) appellees failed to support each element of their affirmative defenses, and (7) Safeco conclusively established the amount of its recovery. Further, in its eighth point of error, Safeco contends that the trial court erred in granting summary judgment for appellees because they failed to negate an element of Safeco's cause of action or to establish conclusively any affirmative defense. We reverse the judgment and render the judgment that the trial court should have rendered.

## BACKGROUND FACTS

In March 1984, American Resources contracted with Man–Gas Transmission and the State of Texas to purchase oil and gas leases. American Resources posted $1 million in letters of credit to secure the performance of the contract. Gaubert arranged for an $800,000 letter of credit from Allied Bank of Irving (Allied), and Barnes arranged for a $200,000 letter of credit from First City Bank of Dallas. American Resources gave notes personally guaranteed by Gaubert to Allied to secure its letters of credit and also pledged some unrelated Oklahoma oil and gas interests.

When the sale did not close between American Resources and Man–Gas, American Resources filed suit in the 193rd District Court to prevent the two banks from paying on the letters of credit to Man–Gas. Judge John Whittington issued a temporary restraining order (TRO) against the banks, and American Resources posted a

$10,000 TRO bond. The order temporarily enjoining the banks from paying on the letters of credit conditioned the issuance of a temporary injunction on American Resources providing a $200,000 bond. Thomas McElroy, the American Resources attorney, dealt with Jeff Trentham, an independent insurance agent, to obtain the $200,000 bond. McElroy gave Trentham a copy of the court's temporary injunction order, a copy of the form of temporary injunction bond that he was requesting, and the financial statements of Gaubert and Barnes. Safeco agreed to act as surety on the requested bond, provided Gaubert and Barnes would indemnify it from loss. On June 13, 1984, American Resources, Gaubert, and Barnes signed contemporaneously a Safeco bond application and a "General Agreement of Indemnity." Trentham inserted Safeco's name as surety on McElroy's proposed bond form, and a Safeco representative signed as surety. The district clerk approved the bond and issued the temporary injunction.

In 1985, Barnes settled with First City Bank of Dallas by paying it $50,000, and that bank was dismissed from the suit. Allied's $800,000 letter of credit remained at issue, and Man–Gas became a party to the suit. On April 25, 1986, Judge Whittington dissolved the temporary injunction and granted summary judgment for Man–Gas against American Resources. On May 30, 1986, Allied and Man–Gas signed an agreement settling all claims and disputes concerning the $800,000 letter of credit, and Allied paid Man–Gas $400,000 in settlement. On June 2, 1986, although Safeco was not a party to the suit, Judge Whittington rendered judgment against Safeco for $200,000 on the bond at issue here. Upon learning of the judgment, Safeco contacted Gaubert and Barnes, delivering copies of the judgment and demand letters. Barnes did not respond to Safeco. Through counsel, Gaubert responded that he was not liable to Allied and that, if Safeco paid, he would not pay Safeco.

Safeco moved for a new trial and, on July 24, 1986, the trial court granted the motion and tried the suit on the bond on August 4, 1986. On January 15, 1987,

Judge Whittington signed a judgment against Safeco in favor of Allied for $200,000. Safeco advised Gaubert and Barnes of the judgment on February 12, 1987, and requested them to abide by the indemnity agreement. Gaubert and Barnes did not respond. Safeco settled with Allied for $185,500 on May 12, 1987.

After the settlement with Safeco, Allied filed suit in the 14th District Court against American Resources and Thomas Gaubert for $214,500, the remaining balance that it was still owed from its settlement with Man–Gas. On August 17, 1987, Safeco filed suit in the 162nd District Court against Gaubert and Barnes on the indemnity agreement. On November 16, 1988, the trial court granted Gaubert's motion to consolidate Safeco's suit into the pending action in the 14th District Court. On January 31, 1989, Gaubert and Allied settled. The only remaining litigation involved Safeco, Gaubert, Barnes, and the indemnity agreement. On March 1, 1989, the trial court denied the motions for summary judgment filed by each party. On October 30, 1989, the day of trial, the trial court permitted the parties to introduce additional exhibits and to resubmit and reargue the motions for summary judgment. Appellees based their grounds on Safeco's alleged failure to issue a proper temporary injunction bond. The trial court then granted appellees' motions for summary judgment and denied Safeco's motion.

## STANDARD OF REVIEW

■ Any party may move for a summary judgment under rule 166a of the Texas Rules of Civil Procedure. When both parties move for summary judgment, each party must carry its own burden, and neither can prevail because of the failure of the other to discharge its burden. *The Atrium v. Kenwin Shops of Crockett*, 666 S.W.2d 315, 318 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). An order denying a motion for summary judgment is not appealable except, as here, when both parties have filed a motion for summary judgment and the court has granted one of the motions and denied the other. *Tobin v.*

*Garcia,* 159 Tex. 58, 316 S.W.2d 396, 400 (1959); *Resource Sav. Ass'n v. Neary,* 782 S.W.2d 897, 903 (Tex.App.—Dallas 1989, writ denied).

The Texas Supreme Court has established the following standards for reviewing a motion for summary judgment:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ To establish a right to recover as a matter of law, the plaintiff as movant must prove conclusively all elements of its cause of action. *Plano Indep. School Dist. v. Oake,* 682 S.W.2d 359, 364 (Tex. App.—Dallas 1984), *rev'd on other grounds,* 692 S.W.2d 454 (Tex.1985). For the defendant as movant to prevail on a summary judgment, he must either (1) disprove at least one element of plaintiff's theory of recovery or (2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *Traylor v. Unitedbank Orange,* 675 S.W.2d 802, 804 (Tex.App.—Beaumont 1984, writ ref'd n.r.e.). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982). The question on appeal is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

## THE BOND

Appellees argue that the threshold question is the legal effect of Safeco's alleged failure to issue the correct bond. They contend that it issued a different, broader bond than the "temporary injunction" bond applied for and that, therefore, they were released from their obligations under the indemnity agreement. Based on this contention, appellees urge their affirmative defenses of failure of consideration and breach of contract.

In reply, Safeco maintains that the trial court should have rejected all of appellees' affirmative defenses to the extent they were based on the nature of the bond because the bond it issued fulfilled the requirements of rule 684 of the Texas Rules of Civil Procedure and, alternatively, that the bond must be read to conform to that rule. Safeco also argues that, even if the bond were too broad, Safeco still gave consideration; hence, appellees' defense of failure of consideration has no merit.

■ Rule 684 of the Texas Rules of Civil Procedure requires a bond before the issuance of a temporary injunction. The purpose of the bond is to provide protection to the enjoined party for any possible damages occurring as a result of the injunction. *Bayoud v. Bayoud,* 797 S.W.2d 304, 312 (Tex.App.—Dallas 1990, writ denied). A cause of action on the injunction bond is predicated on a breach of the condition of the bond. *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 685 (Tex.1990). To prevail on this cause of action, the claimant must prove that the temporary injunction was issued or perpetuated when it should not have been, and that it was later dissolved. *Id.* at 685–86. Specifically, the claimant must prove that the issuance of the injunction caused him damages. *Id.* at 686.

The applicant for the temporary injunction in this case was American Resources, with Safeco as its surety. The claimant on the bond was Allied Bank of Irving. Allied had the burden to prove that the injunction resulted in damages to recover on the bond. *Id.*

Appellees urge that the bond is not a temporary injunction bond because the

wording of the bond does not follow the wording of rule 684 which provides in part:

Before the issuance of the temporary restraining order or temporary injunction the applicant shall execute and file with the clerk a bond to the adverse party ... in the sum fixed by the judge, conditioned that the applicant will abide the decision which may be made in the cause, and that he will pay *all sums of money and costs that may be adjudged against him* if the restraining order or temporary injunction shall be dissolved in whole or in part.

(Emphasis added.) The bond issued in this case states:

American Resources, Inc., will abide the decision which may be made in the aforesaid cause, and that it will pay *all sums of money and costs that may be adjudged against it or incurred by the parties,* if the Temporary Injunction issued on June 6th, 1984 enjoining the parties secured hereby shall be dissolved in whole or in part.

(Emphasis added.) Appellees argue that the express language of the bond demonstrates that it is not a temporary injunction bond and that Safeco issued the wrong bond. Appellees assert that the additional language "or incurred by the parties" broadened the terms and effect of the bond because it permitted all sums of money and costs incurred by Allied to pass to the surety upon dissolution of the injunction without a requirement that the money and costs be incurred as a result of the wrongful issuance of the temporary injunction. *City of Houston v. Plantation Land Co.,* 440 S.W.2d 691, 695–96 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.). We disagree.

■ The limitation on the recovery of damages to those caused by the wrongful issuance of the temporary injunction is not expressly set forth in the language of rule 684; instead, it is implied by the language of the last clause of the rule, "if the restraining order or temporary injunction shall be dissolved in whole or in part." *See DeSantis v. Wackenhut Corp.,* 793 S.W.2d at 686. In the bond at issue, this "if"

clause modifies "that it will pay all sums of money and costs that may be adjudged against it," and it also modifies "or incurred by the parties." Accordingly, we construe the bond to impliedly require proof that the money and costs "incurred by the parties" must have been caused from the issuance of the temporary injunction, just as those adjudged against the principal must be so caused. Consequently, we hold that the addition of the words "or incurred by the parties" did not broaden appellees' liability to include damages that were not caused by the issuance of the temporary injunction.

■ Appellees next argue that, because there was not a finding either in Judge Whittington's order dissolving the injunction or in his final judgment on the bond that the injunction was wrongfully issued or that Allied suffered damage as a result of the issuance of the temporary injunction, these omissions are proof that the bond is not a temporary injunction bond. The record, however, is not clear whether Allied, in its suit on the bond, proved that the issuance of the injunction caused it damage. Further, we have been cited to no authority holding that there is a requirement that the order dissolving a temporary injunction and/or the final judgment on the bond recite the omitted findings relied on here. In any event, the presence or absence of proof of damage caused by the issuance of the injunction was an issue in the suit on the bond. It does not resolve the question of whether the bond was in legal effect a temporary injunction bond.

To further support their argument that the bond is not a temporary injunction bond, appellees point to an interoffice memorandum written by Safeco's corporate counsel. In the memorandum, Safeco's counsel states that the "bond form is really not a temporary injunction bond but is more like a supersedeas bond or even a financial guarantee bond." The memorandum is not proof of the legal effect of the bond. The conclusions drawn by Safeco's counsel during settlement negotiations with Allied do not determine the nature of the bond.

None of appellees' arguments persuade us that Safeco did not provide a temporary injunction bond. We have construed the bond to limit recovery of damages to those caused by the issuance of the injunction. This holding disposes of appellees' only ground for contending that the bond expanded their liability. Because the alleged unauthorized expansion of their liability is the basis for their defenses of failure of consideration and breach of contract, we further hold that these defenses are without merit.

In the event that the indemnity agreement was found to be effective, appellees asserted a number of additional defenses in addition to failure of consideration and breach of contract. To the extent that these defenses relied on Safeco's failure to issue a temporary injunction bond, they could not support summary judgment. However, Gaubert also relied on Safeco's failure to notify the indemnitors and to get their cooperation in defending Allied's suit on the bond and on Gaubert's specific instruction not to settle the case to support his affirmative defenses of release, waiver and estoppel, breach of the duty of good faith and fair dealing, breach of fiduciary duty, and negligence. Likewise, Barnes urged the defenses of waiver/release based on Safeco's failure to contact him to determine what affirmative defenses he had that, if pleaded, could have minimized Safeco's liability to Allied; its failure to notify Barnes of the claim filed against Safeco by Allied or of subsequent settlement negotiations and the agreement reached with Allied; and its failure to properly defend Allied's lawsuit by failing to contact Barnes as to any aspect of the trial. In the alternative, Barnes alleged that, if the indemnity agreement relieved Safeco from contacting him or notifying him of any lawsuit or trial, then the agreement was void as against public policy.

■ Appellees rely on law from other jurisdictions to argue that Safeco had a duty to fully and fairly inform them as indemnitors of the action on the bond and that the notice had to be reasonably definite and certain so as to enable the indemnitor to be present at the trial. *See United N.Y. Sandy Hook Pilots Ass'n. v. Rodermond Indus., Inc.,* 394 F.2d 65, 72–73 (3d Cir.1968) (court agreed with New Jersey notice requirement); *Sky City Stores, Inc. v. United Overton Corp.,* 90 N.C.App. 124, 367 S.E.2d 338, 340 (1988). Appellees recognize that no Texas case has directly examined the subject of notification in this context, but they urge us to adopt the "majority rule" requiring notification to the indemnitor of the nature and extent of third-party claims.

■ Safeco responds that, even if true, appellees' allegations of lack of notice and contact, failure to learn appellees' affirmative defenses, and failure to aggressively defend against Allied's claims depend on Safeco's having a duty under the indemnity agreement to defend appellees against any claim made upon or against the bond and that Safeco had no duty to resist Allied's claim or to defend the suit. We agree that, under the agreement, Safeco had no duty to contact or to notify the indemnitors of Allied's claim, Safeco's decision to defend, or its eventual settlement. We decline to extend the law in this area to impose an implied duty on Safeco to fully inform appellees of the action on the bond. Next, appellees argue that Texas applies a rule of reasonableness, *Delta Engineering Corp. v. Warren Petroleum, Inc.,* 668 S.W.2d 770, 772 (Tex.App.—Houston [1st Dist.] 1984, writ refused n.r.e.), and that Safeco's failure to properly consult with and notify them of the nature and extent of Allied's action against the bond is *per se* unreasonable and against public policy, and prohibits Safeco from enforcing the indemnity agreement. First, we note that the *Delta Engineering* court's rule of reasonableness does not concern notice to the indemnitors of third-party claims against the indemnitee; it concerns the reasonableness of the indemnitee's settlement of a third party claim. A settling indemnitee can recover upon proof of his "potential liability" as well as the reasonableness of the settlement between himself and the third party. *Id.; Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co.,* 490 S.W.2d 818, 824 (Tex.1972) (sufficient for settling in-

demnitee to show a potential liability and that his settlement was reasonable, prudent, and in good faith under the circumstances). Second, we conclude that Safeco made reasonable efforts to notify indemnitors of Allied's claim; it informed the indemnitors of Allied's demand against the bond prior to the trial between Safeco and Allied, and Safeco contacted appellees again after receiving the adverse judgment.

We hold that none of appellees' additional defenses support summary judgment in their favor. We further hold that the trial court erred in granting summary judgment for appellees. We now consider whether the trial court erred in denying Safeco a summary judgment.

## INDEMNITY AGREEMENT

A contract for indemnity is read as any other contract. *Liberty Steel Co. v. Guardian Title Co.*, 713 S.W.2d 358, 360 (Tex.App.—Dallas 1986, no writ). Under principles of contract law, courts must ascertain and give effect to the intentions of the parties as expressed in the instrument. *Ideal Lease Serv. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex.1983). When the contract is unambiguous, we must determine the rights and liabilities of the parties by giving legal effect to the contract as written. *Id.*

The indemnity agreement governs the parties' rights and obligations, and indemnity agreements are strictly construed in favor of the indemnitors, in this case, appellees. *Keystone Equity Management v. Thoen*, 730 S.W.2d 339, 340 (Tex. App.—Dallas 1987, no writ). The doctrine of *strictissimi juris* is a rule of substantive law applicable after the parties' intent has been ascertained. *Id.* In determining the parties' intent in the indemnity agreement, words and phrases are given their ordinary, popular, and commonly accepted meaning. *Id.* Further, we may not expand the parties' rights or responsibilities beyond the limits agreed upon by them in the contract. *Ideal Lease*, 662 S.W.2d at 953.

In its first point of error, Safeco argues that the evidence conclusively established appellees' liability. Initially, we note again that our holding that the bond Safeco issued is a temporary injunction bond establishes that the indemnity agreement at issue is not unenforceable for failure of consideration or breach of contract. The parties agree that the indemnity agreement consists of the bond application, which contains an "Agreement of Indemnity" on its face, and the "General Agreement of Indemnity," contained in a separate document.

The general agreement provides that the purpose of the indemnitors' agreement is to indemnify Safeco "from all loss and expense in connection with the bond of American Resources, Inc. ... to [be] filed in the 198th Judicial District Court...." Barnes argues that the reference to the 198th rather than to the 193rd Judicial District Court renders the general indemnity agreement ambiguous. He maintains that this ambiguity creates a fact issue as to the parties' intent, precluding summary judgment for Safeco. We disagree. We may consider the subject matter of the contract and the surrounding facts and circumstances existing at the time the contract was executed. *Spence & Howe Constr. Co. v. Gulf Oil Corp.*, 365 S.W.2d 631, 637 (Tex.1963). After doing so, we hold that the reference to the "198th Judicial District Court" is a clerical error and that the parties clearly intended to refer to the 193rd Judicial District Court where the bond at issue was in fact filed on June 13, 1984, as indicated by the rest of the typed portion of the general indemnity agreement.

This general agreement also provides:
INDEMNITY TO SURETY: Undersigned agree to pay to Surety upon demand:
1. All loss and expense, including attorney fees, incurred by Surety by reason of having executed any Bond ...
2. An amount sufficient to discharge any claim made against Surety on any Bond ...
It is undisputed that Safeco acted as surety on the bond filed in the 193rd District

Court and that Judge Whittington rendered judgment against Safeco for the full amount of the bond. It is also undisputed that Safeco paid Allied $185,500 "in full and complete satisfaction of the judgment." We agree that Safeco performed under the indemnity contract because it "discharged" Allied's "claim" and suffered "loss and expense" by acting as surety. We also agree that appellees are liable under the terms of the agreement set out above unless Safeco was required to establish that it was in fact liable on the bond.

■ In its second point, Safeco maintains that it was not required to establish that it was liable on the bond to recover from the indemnitors. In the trial court, appellees argued that Safeco had to show that it actually was liable to Allied on the bond, that is, that Judge Whittington's ruling was correct. However, the agreement speaks to this exact issue:

1. Surety shall have the exclusive right for itself and the [Indemnitors] to determine in good faith whether any claim or suit upon any Bond shall, on the basis of liability, expedience or otherwise, be paid, compromised, defended or appealed.

. . . . .

3. Surety's determination in good faith of the foregoing shall be final and conclusive upon the [Indemnitors].

Under these provisions, whether Safeco was liable on the bond makes no difference. It could have determined that it was "expedient" to settle with Allied even without a trial and, as long as it acted in "good faith," its determination would have been "final and conclusive." Similar provisions have been upheld. *Ford v. Aetna Ins. Co.*, 394 S.W.2d 693, 698 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.); *Central Sur. & Ins. Co. v. Martin*, 224 S.W.2d 773, 776 (Tex.Civ.App.—Beaumont 1949, writ ref'd). Safeco, therefore, had the right to demand payment from appellees because it discharged a claim that arose from the suretyship and Safeco also had the discretion to defend, appeal, or settle the claim against it.

■ In its fourth point, Safeco argues that the trial court erred in denying it

summary judgment because there was no evidence that Safeco acted in bad faith. We agree with Safeco that "bad faith" is an affirmative defense. *Ford*, 394 S.W.2d at 698. Appellees neither pleaded nor offered summary judgment evidence that Safeco acted in bad faith in either the trial of Allied's claim on the bond or in reaching a settlement with Allied after judgment was rendered against Safeco on the bond. Accordingly, bad faith is not an issue in this case.

In summary, we sustain Safeco's first, second, and fourth points and hold that the trial court erred in denying Safeco summary judgment on the issue of appellees' liability under the indemnity agreement. We have already indirectly sustained its points five and six urging no evidence of lack of consideration and appellees' failure to support each element of their affirmative defenses. We need not address Safeco's third point in light of our other rulings. Thus, we turn to its seventh point in which it contends that it conclusively established the amount of its recovery and, therefore, we should reverse and render the judgment that the trial court should have rendered. *Tobin*, 316 S.W.2d at 400.

Safeco attached to its motion for summary judgment a sworn, itemized statement of loss and expense that it incurred as surety on the bond. Safeco seeks to recover $202,177.48 that it paid to discharge Allied's claim, plus $5000 in attorney fees it incurred in this case in the trial court. Safeco also requests that this Court award it $3500 in attorney's fees for the appeal to this Court. If we reverse and render judgment for Safeco and if our judgment is not overturned on rehearing or by a higher court, it waives additional attorney's fees incurred in the trial court after the initial denial of its summary judgment motion.

■ The indemnity agreement provides that "an itemized statement of loss and expense incurred by surety, sworn to by an officer of surety, shall be prima facie evidence of the fact and extent of the liability of [indemnitors] to surety in any claim or suit by surety against [indemnitors]." This

provision is enforceable. *Ford,* 394 S.W.2d at 699–700. Appellees did not controvert the amount in the itemized statement. Hence, the summary judgment evidence did not raise a genuine issue of material fact as to the amount of damages and attorney's fees. *Id.* at 700.

We reverse the trial court's judgment and render judgment for Safeco.

